UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SUNIL SAMTANI

                Plaintiff,

    -against-

RAMAKRISHNA CHERUKURI, Individually and in
his official capacity as Chief Executive Officer of
New York Frangrance, Inc. and NEW YORK
FRAGRANCE, INC.,

                Defendants.
----------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-2159 (CBA) (RER)

AMON, Chief United States District Judge:

      Sunil Samtani brings this action pursuant to 42 U.S.C. § 1983 against New York Fragrance, Inc. and its Chief Executive Officer, Ramakrishna Cherukuri. Before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court finds that the plaintiff has failed adequately to demonstrate that the defendants were state actors, as required to maintain a federal cause of action under § 1983. Accordingly, the complaint is dismissed.

## BACKGROUND

      This case arises from a soured business relationship. The complaint alleges the following facts, taken as true at the motion to dismiss stage. New York Fragrance is in the business of selling perfumes and other goods. (Compl. ¶¶ 24, 27.) Between 2001 and 2006, the plaintiff purchased approximately $1.5 million of merchandise from the defendants on credit. (Id. ¶¶ 20, 21, 28.) In 2006, the plaintiff declared bankruptcy in the United States Bankruptcy Court in Texas. (Id. ¶ 22.) At this point, the plaintiff owed approximately $160,000 in remaining debt to

1

the defendants for merchandise received on credit.  (See id. ¶¶ 25, 27, 30.)  The plaintiff does not dispute that he owed money to the defendants.

The defendants chose not to appear as creditors in the plaintiff's bankruptcy proceedings to recover this debt, despite having been put on notice of their right to do so.  (Id. ¶¶ 22-23.)  Cherukuri instead decided to file a criminal complaint with the Richmond County District Attorney's Office in the State of New York based on the fact that the plaintiff owed him and his company money.  (Id. ¶ 23.)  Cherukuri allegedly told the District Attorney not just that the plaintiff owed him money, but also that he believed the plaintiff never intended to pay for the merchandise he received on credit, but instead intended to defraud the defendants and deprive them of the value of their merchandise.  (Id. ¶¶ 24, 27.)

The plaintiff alleges that Cherukuri deliberately omitted material facts from the statement he gave to the District Attorney.  Specifically, he only told the District Attorney about the business transactions for which the plaintiff owed the defendants money, without explaining that during the course of the parties' business relationship the plaintiff had in fact purchased $1.5 million in merchandise on credit and whittled the debt down to the remaining amount owed.  (Id. ¶¶ 25, 28.)  He also omitted the fact the plaintiff had filed for bankruptcy.  (Id. ¶ 30.)

The complaint alleges that Cherukuri testified to the above information before a Grand Jury in the County of Richmond.  (Id. ¶ 31.)  As a result, the Grand Jury indicted the plaintiff on one count of Grand Larceny in the Second Degree and one count of Scheme to Defraud in the First Degree.  (Id. ¶ 32.)  A Governor's arrest warrant was issued to secure the plaintiff's arrest and extradition to New York.  (Id. ¶ 22.)  On August 13, 2009, the plaintiff was arrested in Texas and thereafter travelled to New York where has taken into custody by the New York City Police Department, arraigned, and prosecuted on the charges of Grand Larceny and Scheme to Defraud.

(Id. ¶¶ 34, 36.) The plaintiff alleges that he spent approximately fifteen months making court appearances, and approximately $100,000 in legal fees defending his case. (Id. ¶ 42.) On August 25, 2010, the charges against the plaintiff were dropped upon the recommendation of the District Attorney. (Id. ¶ 43.)

Based on these allegations, the plaintiff asserts claims against Cherukuri and New York Fragrance under § 1983 for false arrest, malicious prosecution, denial of the right to a fair trial, malicious abuse of process and corporate liability, as well as state law claims for malicious prosecution and intentional infliction of emotional distress. The defendants move to dismiss the federal claims on the ground that they cannot be held liable under § 1983 because they are not state actors.[1]

## DISCUSSION

In adjudicating a motion to dismiss pursuant to Rule 12(b)(6), a district court "must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff." State Farm Mut. Auto Ins. Co. v. Rabiner, 749 F. Supp. 2d. 94, 98 (E.D.N.Y. 2010). Dismissal is appropriate only if "a plaintiff can prove no set of facts in support of her claim that will entitled her to relief." Id. The question at this stage of litigation is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support her claims." Id. To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] The defendants have moved to dismiss all of the plaintiff's federal claims *except* the claim for malicious prosecution. However, like all of the federal claims asserted by the plaintiff, a malicious prosecution claim under § 1983 can only be maintained against a state actor. Washington v. Cnty. of Rockland, 373 F.3d 310, 315 (2d Cir. 2005) ("To establish a constitutional violation under § 1983, plaintiffs must demonstrate that [] defendants were acting under color of state law at the time of the alleged malicious prosecution."). Thus, the Court's analysis applies with equal force to the plaintiff's federal malicious prosecution claim, and the Court therefore dismisses that claim as well.

face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

The viability of the plaintiff's claims turns on whether the defendants, a private citizen and private corporation, can be held liable under 42 U.S.C. § 1983. "It is axiomatic that private citizens and entities are not generally subject to Section 1983 liability." Aniloa v. Spota, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (citing Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)). In Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), however, the Supreme Court set forth a two-pronged test for determining when private action is "fairly attributable" to the state, such that it can give rise to § 1983 liability:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

457 U.S. at 937. There is no dispute that the first element is satisfied in this case. The plaintiff alleges that his constitutional rights were violated when the District Attorney exercised his authority to have the plaintiff arrested, arraigned, and prosecuted on charges of Grand Larceny and Scheme to Defraud. At issue here is whether the plaintiff has adequately alleged that the private defendants charged with the alleged deprivation of his rights "may fairly be said to be [] state actor[s]." Id.

A private citizen may be deemed a state actor for the purposes of a § 1983 action if "(1) the state compelled the private party's conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state." Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (citing Sybalski v.

Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)). A private citizen may also be deemed a state actor if he conspires with a state official to deprive another of his constitutional rights. Id.; Aniloa, 774 F. Supp. 2d at 498. Under each of these theories, the central inquiry is whether there was "'such a close nexus between the State and the challenged [private] action that the seemingly private behavior may be fairly treated as that of the State itself.'" Baez, 745 F. Supp. 2d at 221 (quoting Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003)).

The plaintiff does not allege that the state compelled the defendants' conduct, that the defendants fulfilled a role traditionally performed by the state, or that there was a conspiracy between the defendants and the state officials to violate the plaintiff's constitutional rights. Accordingly, the defendants can only be held liable as state actors in this case if they can be said to have "acted jointly" with the state.

"'To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.'" Anilao, 774 F. Supp. 2d at 474 (quoting Bang v. Utopia Restaurant, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)). "'A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.'" Johnson v. City of New York, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (quoting Ciambriello, 292 F.3d at 323). "Rather, a plaintiff must allege that the private entity and state actors 'carried out a deliberate, previously agreed upon plan," or that their activity 'constituted a conspiracy or meeting of the minds.'" Id. (quoting Dahlberg v. Becker, 748 F.2d 85, 93 (2d Cir. 1984)).

The plaintiff argues that it is well-settled law in this Circuit that a private person can be held liable as a state actor under the joint action theory when he knowingly making a false allegation to the police that results in an arrest. However, the plaintiff does not cite a single Second Circuit decision in support of this argument, and numerous decisions from district courts in this Circuit have expressly held the opposite: that the mere provision of false information to state officials—even knowingly—is not joint action for the purposes of triggering liability under § 1983. See, e.g., Bender, 2011 WL 4344203, at *14 (S.D.N.Y. 2011) (holding that allegations that defendant "acted as a complaining witness in [Plaintiff's] prosecution in cooperation with [the ADA] do not suffice to establish that Defendants' action could fairly be treated as that of the state itself."); Delince v City of N.Y., 2011 WL 666347, at *3 (S.D.N.Y. 2011) (holding that "deliberately furnishing false information to law enforcement," causing plaintiff's arrest, did not render defendant a state actor); Khaja-Moinuddin v. City of N.Y., 2010 WL 3861003, at *3-4 (E.D.N.Y. 2010) (holding that defendant was not a state actor even where he filed fabricated domestic violence report against plaintiff, based upon which plaintiff was arrested); Baez, 745 F. Supp. 2d at 221 (holding that defendant was not a state actor even though he deliberately "provided false information to law enforcement officials who then interrogated and arrested" plaintiff); Chodkowski v. City of N.Y., 2007 WL 2717872, at *8 (S.D.N.Y. 2007) (holding that defendant who falsely told police that plaintiff assaulted a waitress, causing plaintiff's arrest, was not a state actor); Johns v. Home Depot U.S.A., Inc., 221 F.R.D. 400, 405 (S.D.N.Y. 2004) (holding that even if defendant caused plaintiff's detainment by deliberately supplying police with false information, plaintiff would fail to state a claim for joint action under § 1983).[2]

---

[2] The plaintiff selectively quoted certain district court cases for the proposition that "where an individual instigates an arrest and does so based on knowingly false information, that individual may be held liable for false arrest." Aniloa, 774 F. Supp. 2d at 511; see also Camac v. Long Beach City School Dist., 2011 WL 3030345, at *8 (E.D.N.Y. 2011); Paul v. Bank of Am., 2011 WL 684083, at *8 (E.D.N.Y. 2011); Rateau v. City of N.Y., 2009 WL

The plaintiff relies on Weintraub v. Board of Education of City of N.Y., 423 F. Supp. 2d 38, 58 (E.D.N.Y. 2006), in which the court held that a private actor who made false statements to the police with the intent to have an innocent person arrested could be held liable under § 1983 "for invoking the state's power to intentionally violate a citizen's constitutional rights." However, cases interpreting Weintraub have limited its application to the narrow circumstances presented in that case where a defendant has a history of making baseless accusations of against the plaintiff with the intent to secure the plaintiff's arrest. See Delince v City of New York, 2011 WL 666347, at *3 (S.D.N.Y. 2011) (holding that a "histor[y] of filing baseless complaints against the plaintiffs" is "distinct from a single, allegedly false statement"); Chodkowski, 2007 WL 2717872, at *8 (distinguishing Weintraub on the grounds that "the plaintiff [in Weintraub] alleged prior incidents that demonstrated a long-standing vendetta against the plaintiff" rather than a single incident of providing false information to the police); Baez, 745 F. Supp. 2d at 221 (holding that although a plaintiff who has a "longstanding pattern of repeated lies and false accusations made for the purpose of procuring arrest" may act under the color of state law, a plaintiff who provides false information to law enforcement officials on a single occasion does not); Bender, 2011 WL 4344203, at *14 (same). There is no such history of false allegations here.

---

3148765, at *7 (E.D.N.Y. 2009). In each case cited by the plaintiff, however, the quoted language was part of the court's analysis of whether the defendant instigated the arrest or prosecution, which is a separate element of a false arrest/malicious prosecution claim distinct from the question of whether a private citizen can be held liable as a state actor. In both Camac and Rateau there was no doubt that the defendants were state actors: Camac was a § 1983 action brought against a school district and administrators, and the individual defendant in Rateau was a state actor because he acted within the scope of his employment for the City of New York. 2011 WL 3030345, at *1; 2009 WL 3148765, at *4. Paul involved only a state law claim for false arrest, not a § 1983 claim. 2011 WL 684083, at *8. Finally, in Aniloa, the court separately discussed whether each of the private defendants constituted a state actor, expressly noting that "[t]he provision of information to . . . police officers is not sufficient to constitute joint action with state actors for the purpose of § 1983, even if the information provided is false or results in the officers taking affirmative action." 774 F. Supp. 2d at 497. The court dismissed the plaintiff's § 1983 claims against certain private parties because they were not state actors, and upheld only the claims against the defendants who did not "'merely elicit' an exercise of state authority," but actually conspired with the District Attorney to present false testimony against the plaintiff. 774 F. Supp. 2d at 501.

Moreover, the Court is not persuaded that the holding of Weintraub is consistent with the Supreme Court's decision in Lugar. Although there is language in Lugar suggesting that a private party can be held liable under § 1983 for "invoking the aid of state officials to take advantage of state-created" procedures, the Supreme Court expressly limited this portion of its holding to the factual context of that case, where a state-created procedure allowed "state officials [to] attach property on the *ex parte* application of one party to a private dispute." Lugar, 457 U.S. at 942. The Court emphasized:

> [W]e do not hold today that a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law. The holding today . . . is limited to the particular context of prejudgment attachment.

Id. at 939 n. 21 (quotation marks and citation omitted); See Dahlberg, 748 F.2d at 93 (citing Lugar for the proposition that "the mere invocation by defendants of New York's legal procedures does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor").

The Supreme Court's decision in Lugar establishes that "when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that party's conduct actionable under § 1983." Cruz v. Reilly, 727 F.2d 79, 82 (3d Cir. 1984). However, absent a legal mechanism that "drapes private actors with the power of the state," or "subordinate[s] the [state actor's] judgment to that of [the private actor]," id. at 82, a private citizen cannot be held liable under § 1983 unless he acted in concert with state officials to deprive the plaintiff of his rights, Dahlberg, 748 F.2d at 93 (holding that defendants were not state actors under Lugar because plaintiff did "not establish any meeting of the minds or intent to conspire" with the state). Without some kind of concerted

8

action, the mere invocation of the state's power does not turn a private actor into a state actor for purposes of § 1983 liability.  Id.; see Kash v. Honey, 38 F. App'x 73, 76 (2d Cir. 2002) (holding that defendant "did not act jointly with a state actor" merely by maliciously filing a false complaint of disorderly conduct against the plaintiff because "[p]rivate misuse of an otherwise valid statute is not state action"); Rosen v. County of Suffolk, 53 F. App'x 578, 580 (2d Cir. 2002) (holding that plaintiff failed to allege that defendant, who used false information to seek an order of protection against plaintiff, was a state actor because "the complaint [did not] allege facts demonstrating that the private entity acted in concert with the state actor."); Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999) (holding that there is no joint action where a police officer exercises independent judgment in responding to a private party's request for assistance).

In this case, the plaintiff does not allege any facts suggesting that the defendants exercised control or undue influence over the District Attorney, or somehow prevented the District Attorney from exercising his independent judgment to submit the case to a grand jury.[3] Nor is there any suggestion that there was any meeting of the minds or agreement between the defendants and the District Attorney to deprive the plaintiff of his constitutional rights.  Even accepting as true the plaintiff's allegations that Cheruruki deliberately omitted material information from his statement to the District Attorney, this conduct does not rise to the level of joint action with state authorities sufficient to give rise to liability under § 1983.  Because the

---

[3] Accordingly, the plaintiff's reliance on Tadco Constr. Corp. v. Dormitory Auth. of N.Y., 700 F. Supp. 2d 253 (E.D.N.Y. 2010), is misplaced.  In Tadco, the defendant was a private employee of the owner of the property on which the plaintiff was working.  The defendant called the police, stated that he had been authorized by his supervisors to have the plaintiff arrested for trespassing, and "demanded" that the plaintiff be arrested.  The allegations in the complaint suggested that the police did not exercise independent judgment in arresting the plaintiff.  Id. at 269.

9

plaintiff has not adequately alleged that the defendants were state actors, the defendants' motion to dismiss the plaintiff's § 1983 claims is granted.

## CONCLUSION

The plaintiff's federal claims brought pursuant to § 1983 are dismissed. Having dismissed all of the claims over which this Court would have original jurisdiction, the Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims.[4] Accordingly, the defendants' motion to dismiss is granted and the complaint is dismissed in its entirety. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      May 9, 2012

/s/
Carol Bagley Amon
Chief United States District Judge

---

[4] The Court therefore need not address whether the plaintiff's state law claim for intentional infliction of emotional distress is time barred.